UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIC HOPKINS,

    Plaintiff,

v.

CITY OF COLUMBUS,
DEPARTMENT OF PUBLIC SERVICE,

    Defendant.

Case No. 2:12-cv-336
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

Plaintiff Eric Hopkins is a former employee of Defendant City of Columbus, Department of Public Service, who brings this action alleging that Defendant terminated his employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a) and Ohio's prohibition against Age Discrimination in Employment, Ohio Revised Code § 4112.14 and/or § 4112.99. This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 21.) For the reasons that follow, the Court **GRANTS** Defendant's motion.

I.

Plaintiff was employed as a Refuse Collection Vehicle Operator for the Refuse Division of Defendant City of Columbus, Department of Public Service from 2000 through January 20, 2012, when Defendant terminated him. (Human Resource Manager William Fodor's Aff. ¶ 2; ECF No. 21-6.) The Refuse Division is responsible for the trash collection for the City of Columbus. Plaintiff operated a refuse collection truck on an assigned route and worked out of the Georgesville Road Refuse Station.

During his employment, Plaintiff was in a bargaining unit governed by the collective bargaining agreement ("CBA") between the City and the American Federation of State, County

and Municipal Employees Local 1632 ("AFSCME"). Article 10 of the CBA sets forth the applicable disciplinary procedure to be followed for AFSCME employees. *Id.* ¶ 4. Pursuant to Article 10, when an appointing authority or designee acquires knowledge which may lead to disciplinary action, the appointing authority is required to investigate. *Id.* The investigation may include interviewing possible witnesses and gathering relevant documents. The employee who is the focus of the investigation may be interviewed and, upon request, may have union representation. *Id.* Once the investigation is complete, the appointing authority or designee must notify the union of one of five specific results: counseling; issuance of an oral reprimand; issuance of a written reprimand; notice that the appointing authority intends to bring disciplinary charges against the employee; or notice that the appointing authority intends to end the investigation with no further action. *Id.*

If disciplinary charges are brought, both the employee and the union must be given written notice of the charges. *Id.* ¶ 5. A hearing on the merits of the charges is then scheduled before a Human Resources ("HR") Department Hearing Officer. *Id.* The City of Columbus' HR Department is a separate department from the City's Department of Public Service. The Hearing Officers are employed only by the HR Department. *Id.* The Hearing Officers are to conduct the hearing in a fair manner and they are not to assume the role of prosecutor in the hearing. *Id.* Employees have the right to have representation, to present relevant documents and to present and cross-examine witnesses. *Id.* The hearing may result in action ranging from a finding that no discipline is warranted up to suspension, demotion, or termination of employment. *Id.* The final decision as to the appropriate level of discipline is made by the Hearing Officer. *Id.*

The CBA also provides for a three step grievance and arbitration procedure. *Id.* ¶ 6.

Disciplinary grievances, such as terminations, are filed at Step 2; if the union is not satisfied with the outcome the grievance may be moved to binding arbitration. *Id.*

The City of Columbus, has established City Central Work Rules that all employees are required to follow. *Id.* ¶ 8. The City follows a policy of progressive discipline, imposing increasingly severe penalties for work rule violations. *Id.* Work Rule Number 5 and Number 7 are relevant to this case.

Work Rule Number 5 relates to attendance and prohibits, among other things, an employee from being absent without leave ("AWOL") according to contract and/or policy; leaving the assigned work area during working hours without approval; and, violating any departmental or divisional attendance policies. *Id.* Article 24 of the CBA provides in part that an employee is AWOL if the employee leaves the workplace without notifying and/or securing the approval of his/her supervisor. *Id.* ¶ 9. The Department of Public Service has established a department General Leave Policy that provides in part that an employee who is AWOL is subject to disciplinary action and that an employee is AWOL if he/she leaves the workplace without notifying and/or securing the approval of his/her supervisor. *Id.* ¶ 10. Work Rule Number 7 relates to neglect of duty and prohibits an employee from stopping work or making preparation to leave work before the specified quitting time without authorization. *Id.* ¶ 8.

Prior to November 23, 2011, Plaintiff had been approved for intermittent FMLA leave. (Pl.'s Dep. at 18; ECF No. 21-1.) According to Plaintiff, he was approved for leave for weekly visits to a psychologist for himself and his son. *Id.* at 18–19.

James Spencer is the Assistant District Manager at the Georgesville Road Refuse Station. Mr. Spencer's duties include scheduling, tracking attendance, and running the automated

3

time and attendance program, called Genesis, each morning. (Assistant Dist. Manager James Spencer's Aff. ¶ 3, Ex. C; ECF No. 21-5.) Genesis will show when employees clock in or out, whether they are scheduled for approved leave, and whether an employee was tardy. *Id.* On November 23, 2011, Mr. Spencer ran Genesis and saw that Plaintiff had clocked out approximately an hour early the day before. *Id.* ¶¶ 3, 5. Mr. Spencer did not have a request for leave form for Plaintiff for that date and had not been advised by Anthony Fanin, Plaintiff's immediate supervisor, that Plaintiff was leaving early. Mr. Spencer testified that Mr. Fanin informed him that Plaintiff left early without proper notice. *Id.* ¶ 5. Mr. Spencer notified Homer Creasap, the District Manager at the Georgesville Road Refuse Station, that Plaintiff had left work early without notifying his supervisor. *Id.*

Pursuant to the CBA, an investigation meeting was held with Plaintiff, his union representative, and Mr. Creasap on December 8, 2011. (Pl's Dep. at 28–30; ECF No. 21-1.) In response to the allegation that he was AWOL for having left work without authorization on November 22, 2011, Plaintiff wrote:

> Due to going through a divorce I go every Tuesday to my counselor on FMLA. I think I've been handling it well due to the fact I've not been AWOL any morning (illegible) in time, even having to live at two different homes over the last three months so I feel a little understanding would be supportive.

(Pl.'s Dep. Ex. 4; ECF No. 21-2 at 19.)

Mr. Creasap recommended counseling for Plaintiff for his failure to notify a supervisor before he left work early on November 22, 2011. (District Manager Homer Creasap's Aff. ¶ 4; ECF No. 21-3.) Mr. Creasap sent to the Department of Public Service HR Manager William Fodor, the completed Administrative Investigation Report that included his recommendation and

4

his statement, which read:

> Eric has been using FMLA for quite awhile and knows he should notify his supervisor or management of his need to leave early. Eric usually does notify someone but this time did not. Eric understands from here on to make sure he does so. Eric had completed his assignments on 11-22-11 prior to leaving and usually converses with me but I happened to be on vacation this time.

(Fodor's Aff., Ex. 2; ECF No. 21.6.)

Mr. Fodor is responsible for managing labor and employee relations for the Department of Public Services. *Id.* ¶ 1. Mr. Fodor reviewed the Investigation Report and believed there was evidence of a rule violation. *Id.* ¶ 12. Because the City follows progressive discipline, Mr. Fodor reviewed Plaintiff's disciplinary history to determine what level of discipline should be recommended. *Id.* Plaintiff's records showed that he was on a Last Chance Agreement that provided that if he were "found in violation of any Central Work Rule by a disciplinary Hearing Officer, within three (3) years from the effective date of [the Last Chance Agreement], the appropriate discipline shall be termination from his employment." (Pl.'s Dep., Ex. 13; ECF No. 21-2 at 25.) Following the policy of progressive discipline, Mr. Fodor recommended that the appointing authority bring disciplinary charges against Plaintiff. (Fodor's Aff. ¶ 13; ECF No. 21-6.) Michael Pickard, the Division of Refuse Operations Manager, and Mr. Wylee Parks, the Division of Refuse Administrator, also reviewed the Investigation Report and concurred with Mr. Fodor's recommendation. *Id.* The appointing authority, Mark Kelsey, gave approval to proceed with charges. *Id.* Pursuant to the CBA, Mr. Fodor sent the union notice that the appointing authority intended to bring disciplinary charges against Plaintiff. *Id.* ¶ 14.

On January 10, 2012, a disciplinary hearing was conducted before a Department of HR Hearing Officer. *Id.* ¶ 15. Plaintiff was charged with violating Rule Number 5– Attendance, and

5

Rule Number 7 – Neglect of Duty. Mr. Fodor was present as management's representative. *Id.* The President and Vice President of AFSCME were also present. (Fodor's Aff. ¶ 15. ECF No. 21-6) Plaintiff, however, "wanted to have legal counsel with [him] at" this hearing. (Pl.'s Aff. ¶ 5; ECF No. 25-1.) In order to utilize legal counsel at the hearing, the Union required Plaintiff to sign a waiver of union representation, which provides:

> I, <u>Eric Hopkins</u>, having been fully advised of my right to Union Representation, do hereby fully waive any and all rights to Union representation and agree to hold the Union harmless for any result that may occur.
>
> I further understand and agree that the Union will not represent me in the future for any result of this action that I may disagree with or wish to challenge.

(Pl.'s Aff., Ex. A; ECF No. 25-1 at 6.)

Plaintiff signed the waiver. During the disciplinary proceedings, Plaintiff's attorneys cross-examined Defendant's witness, Mr. Fanin, and Plaintiff also testified. Plaintiff presented documentation to show that he had a prescheduled doctor's appointment on November 22, 2011. *Id.* The Hearing Officer found that Plaintiff had violated Work Rules 5 and 7. (Fodor Aff. ¶ 15; ECF No. 21-6.) Because Plaintiff was on a Last Chance Agreement, the Hearing Officer determined that the appropriate discipline was termination of employment. *Id.*

Defendant submits evidence that, in 2010, sixty-nine Department of Public Service employees were disciplined for violating Work Rule Number 5. *Id.*, Ex. 3. In 2011, seventy-five Department employees were disciplined for violating that Rule. *Id.* Two of those employees were disciplined for leaving the work area without permission. *Id.* Neither of those employees had approved FMLA leave. *Id.*

On January 24, 2010, Plaintiff applied for unemployment benefits. After a hearing,

6

Plaintiff was awarded unemployment benefits. (Pl.'s Aff., Ex. F; ECF No. 25-1 at 22.)

On April 16, 2012, Plaintiff filed this action in the Franklin County Court of Common Pleas, alleging claims for age discrimination under Ohio law and for interference and/or retaliation in violation of the FMLA. Defendant removed the case to this Court based upon federal question jurisdiction. Defendant has now moved for summary judgment on all Plaintiff's claims. (ECF No. 21.) That motion is ripe for review. (ECF Nos. 25, 26.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also*

7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

### A. Age Discrimination

Plaintiff claims that Defendants terminated him in violation of Ohio's age discrimination statute, Ohio Revised Code § 4112.14. Section (B) of that law provides a cause of action to any employee aged forty years or older who has been discharged, without just cause, on account of the employee's age, and provides that damages including reinstatement, lost wages and benefits, and costs, including attorney's fees, are available as compensation for discrimination. "Section (C), the 'arbitration exhaustion' requirement, however, provides that the cause of action is not available where 'the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause.'" *Blair v. Lucent Technologies Inc.*, C2-06-450, 2007 WL 869715, at *4 (S.D. Ohio Mar. 20, 2007). Defendant argues that it is entitled to summary judgment on Plaintiff's age discrimination claim because Plaintiff failed to satisfy the arbitration exhaustion requirement.

In response, Plaintiff asserts that he "did not have available to him the opportunity to arbitrate his discharge because he was required to sign a waiver of his rights to the grievance process." (Pl.'s Mem. in Opp. at 10.) Plaintiff's argument is not well taken.

8

This Court has explained that "[a]n 'opportunity to arbitrate' means that Plaintiff 'had access to an arbitration procedure.'" *York v. A.K. Steel Corp.*, No. C-1-04-250, 2005 WL 3338696, at *7 (S.D. Ohio Dec. 8, 2005) (finding employees have opportunity to arbitrate when arbitration is provided for under a collective bargaining agreement). "If arbitration was available, and [a plaintiff] did not avail [himself or herself] of it, then the statute would bar [his or her] claim of age discrimination." *Blair*, 2007 WL 869715, at *4. It is undisputed that Plaintiff was in a position governed by the CBA between Defendant and AFSCME. It is also undisputed that the CBA contains a grievance and arbitration procedure. Thus, Plaintiff had the opportunity to avail himself of the arbitration procedure. Plaintiff, however, chose to waive his right to arbitrate in exchange for the ability to have legal counsel represent him.

Courts, including this one, have found that the arbitration exhaustion provision applies even when a plaintiff seeks to utilize the arbitration procedure, but the union refuses to arbitrate. In *Cramton v. Siemens Energy & Automation, Inc.*, C-1-08-579, 2009 WL 2524689 (S.D. Ohio Aug. 17, 2009), the plaintiff maintained that he did not have an opportunity to arbitrate because the Union refused to arbitrate his discharge. This Court explained that "the Union's refusal to arbitrate does not negate the fact that the opportunity to arbitrate was available to Plaintiff." *Id.* at *4. The Court further explained that if the plaintiff believed that the union's conduct was "discriminatory, dishonest, arbitrary, or perfunctory," then he must pursue a claim for breach of the union's duty of fair representation. *See also Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 990 (N.D. Ohio 2010) ("To prove that the union breached its duty of fair representation, an employee must show that 'the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith.'") (quoting *Garrison v. Cassens Transp. Co.*, 334 F.3d

9

528, 538 (6th Cir. 2003). "In such a case, a plaintiff may bring suit against both his union and his employer." *Cramton*, 2009 WL 2524689, at *4 (citing *Proffltt v. A.K. Steel Corp.,* Case No. C–1–03–471, 2006 WL 212074 at *11 (S.D. Ohio Jan.25, 2006); *Sutterlin v. Mansfield Plumbing,* No. 00COA0139, 2001 WL 310633 at *1 (Ohio Ct. App. Mar.26, 2001)).

In the instant action, Plaintiff has not claimed a breach of duty by the union. Plaintiff was not forced to abandon the grievance and arbitration procedure of the CBA and choose litigation instead. He chose to do so voluntarily. He cannot now avoid the consequence of that decision. Accordingly, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

## B. FMLA Interference/Retaliation

The FMLA entitles employees to an annual total of twelve weeks of leave for a number of reasons including because of a "'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). Upon returning from FMLA leave, an employee must be reinstated to his position or an equivalent position in terms of pay, benefits, and other conditions of employment. 29 U.S.C. § 2614(a)(1).

The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]," 29 U.S.C. § 2615(a)(1), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *Id.* at § 2615(a)(2). Consistent with these proscriptions, "[e]mployers may not discriminate against employees on FMLA leave in the administration of their paid leave policies." 29 C.F.R. § 825.207(a). Employers who violate the FMLA are liable to the employee for damages and such equitable relief as may be appropriate. 29 U.S.C. §

10

2617(a)(1).

The Sixth Circuit "has recognized two discrete theories of recovery under the FMLA: (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (citing *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 691 (6th Cir. 2009); *Arban,* 345 F.3d at 400–01). Plaintiff alleges FMLA claims under both theories. Where, as here, a plaintiff sets forth an FMLA claim based on circumstantial evidence, it is evaluated under the familiar *McDonnell Douglas* burden-shifting framework. *Id.* (citations omitted). That is, first the employee must establish a *prima facie* case; if this has been done, the employer must articulate a lawful explanation for its conduct; then the burden shifts back to the employee to prove that the statute has been violated. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973).

For an FMLA interference claim, a plaintiff must establish that: "(1) he was an eligible employee, (2) defendant was a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave defendant notice of his intent to take leave, and (5) the defendant denied his FMLA benefits or interfered with FMLA rights to which he was entitled." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 482 (6th Cir. 2010). For a retaliation claim, a plaintiff must establish that: "(1) []he was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to h[im]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 556 (6th Cir. 2006)

11

(citing *Arban,* 345 F.3d at 404).

Although Defendant states that Plaintiff cannot establish a *prima facie* case of either interference or retaliation, it focuses its argument and evidence on its contention that it set forth a legitimate reason for terminating Plaintiff. Defendant contends that Plaintiff has submitted no evidence to show that the proffered reason for termination was pretextual. This Court agrees.

Defendant terminated Plaintiff pursuant to a last chance agreement that required termination for violation of any work rule, and Plaintiff was found to have violated a work rule that prohibited an employee from leaving work without notifying a supervisor. This is a legitimate reason not related to Plaintiff's FMLA request. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("the defendant need not *prove* a nondiscriminatory reason for" the adverse employment action taken against the plaintiff, "but need merely *articulate* a valid rationale") (citing *Mary's Honor Center v. Hicks*, 509 U.S. 502, 514 (1993)) (emphasis in original).

Plaintiff makes no effort to specifically show that this reason is pretextual, addressing only his burden of setting forth a *prima facie* case of interference and retaliation. Consequently, Plaintiff has failed to meet his burden of showing that Defendant's articulated reason for terminating Plaintiff was a pretext for engaging in FMLA-prohibited interference or retaliation.

However, even if Plaintiff had attempted to show pretext, on the evidence before this Court he would have failed. This is because even believing all of Plaintiff's evidence, and drawing all justifiable inferences in his favor, the Court finds that Defendant made a "reasonably informed and considered decision" before it terminated him and Plaintiff cannot show that Defendant's decision-making process was "unworthy of credence," *i.e.*, Defendant had an honest belief in its legitimate nondiscriminatory reason for terminating Plaintiff. *Seeger v. Cincinnati*

12

*Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 808 (6th Cir. 1998)).

In the FMLA context, the Sixth Circuit has "adopted the honest belief rule, reasoning that it is not in the interests of justice for [a court] to wade into an employer's decisionmaking process." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (FMLA interference and retaliation case) (citation omitted); *see also Seeger*, 681 F.3d 274 at 286 (FMLA retaliation claim); *Adams v. Auto Rail Logistics, Inc.*, 504 F. App'x 453, 457–58 (6th Cir. 2012) (FMLA interference case where court reasoned that the employer "need only demonstrate that it believed that the plaintiff was misusing the FMLA such that it would have discharged the plaintiff despite any legitimate FMLA leave"); *Weimer v. Honda of Am. Mfg., Inc.*, 356 F. App'x 812, 819 (6th Cir. 2009) (interference case sustaining instruction that permitted the jury to decide whether, in firing the employee who requested FMLA leave, the employer honestly believed the plaintiff misrepresented his need for leave).[1] The *Donald* court explained:

---

[1] While neither party briefs this issue, the Court notes that recently, in *Tillman v. Ohio Bell Telephone Co.*, No. 11-3857, 2013 WL 5539612 (6th Cir. Oct. 8, 2013), the Sixth Circuit indicated that it was unsure whether in any published opinion it had actually adopted the honest belief rule in an FMLA *interference* case. The *Tillman* court stated that this circuits' "recent precedential decision in *Donald v. Sybra, Inc.*," only "generally approved the 'honest belief' defense in affirming the district court's grant of summary judgment to the employer." *Id.* at *13. Even though *Donald* dealt with interference and retaliation claims, the *Tillman* court expressed reservation about whether, on different facts, the honest belief defense would apply to FMLA interference claims. The court concluded that the case before it "did not require [it] to resolve this thorny issue, however, because [the plaintiff] failed to show entitlement to FMLA leave in the first place. *Id.* at *13.

This Court is bound by *Donald*, a published case that affirmed a district court's application of the honest belief rule to an FMLA interference claim, and accepts as persuasive *Adams* and *Weimer*, *supra*, two unpublished Sixth Circuit cases that utilized the doctrine in interference claims.

13

> It is instead the employer's belief, and whether it is informed and nondiscriminatory, with which we are concerned. We do not require that the employer arrived at its decision in an "optimal" matter, *id.* at 599, but that it "reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (internal quotation marks omitted).

*Donald*, 667 F.3d at 763. "When an employer's decision-making process is 'unworthy of credence,' or where error on the part of the employer is 'too obvious to be unintentional,' reliance on such a process does not constitute an 'honest belief.'" *Seeger*, 681 F.3d at 288 . 2012) (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 807–08 (6th Cir. 1998)).

In the case *sub judice*, there is no dispute that Defendant's work rule required Plaintiff to notify his supervisor prior to leaving. There is also no dispute that this requirement applied regardless of the reason for leaving early and that Plaintiff was aware of this requirement. That Plaintiff was leaving to go to a doctor's appointment, whether on FMLA leave or not, is irrelevant. Plaintiff's approval to use intermittent FMLA leave did not absolve him of the responsibility to follow Defendant's customary procedures for requesting leave. *See* 29 C.F.R. § 825.302(d) and 29 C.F.R. § 825.303(c) (complying with employer policy provisions). Defendant's rule does not conflict with the FMLA nor does it diminish the protections guaranteed by the FMLA.

In accordance with the CBA, Defendant conducted an investigation into the circumstances of Plaintiff's leaving work early on November 22, 2011. Defendant took Plaintiff's statement about that day and nothing in it would lead one to believe that he had notified his supervisor prior to leaving, indeed it is just the opposite. Plaintiff mentions only that

14

he felt some understanding was in order since he had not been AWOL in the morning over the last three months even though he was going through a divorce and was spread between two separate residences. And, Mr. Creasap believed Plaintiff had not notified his supervisor prior to leaving and stated so in the Investigation Report. As the Report went through higher levels of review it was certainly reasonable for Mr. Fodor and the other managers to find that Plaintiff was AWOL and in violation of Work Rule Number 5. Further, Plaintiff had a disciplinary hearing where he was represented by two attorneys and given the opportunity to once again tell his version of the events, present evidence in his favor, and cross-examine Defendant's witness. At the conclusion of the hearing, the Hearing Officer found that Plaintiff had violated the City of Columbus' Work Rules.

Additionally, Plaintiff's termination pursuant to the Last Chance Agreement was proper. Defendant submitted evidence that it routinely enforces Work Rule Number 5 and follows its policy of progressive discipline. The Last Chance Agreement, which Plaintiff agreed to, provided that if within three years Plaintiff was found to be in violation of a work rule by a disciplinary Hearing Officer, the appropriate discipline was required to be termination. There is no dispute that Plaintiff was found in violation of two work rules by the HR Department Hearing Officer. The Last Chance Agreement was effective March 30, 2011 and Plaintiff's termination was effective January 20, 2012, which is within the applicable three year period. The City was within its rights to terminate Plaintiff's employment. *Allen v. Butler County Comm's.* 331 F. App'x 389, 396 (6th Cir. 2009) (county did not interfere with FMLA rights by terminating employee who violated last chance agreement through his failure to abide by CBA's call-in policy and his improper use of "flex time").

Plaintiff maintains throughout his opposition memorandum that he informed his supervisor that he was leaving work early on November 22, 2011. He further contends that the Ohio Department of Job and Family Services accepted his testimony in this regard when it determined he was entitled to unemployment benefits. Plaintiff suggests that this factual finding, which was not appealed by Defendant, has a preclusive effect on this Court.

First, Plaintiff is mistaken about the preclusive effect of the administrative agency's determination. That decision "has no bearing on [Plaintiff's] district court case." *Murray v. Kaiser Permanente*, 52 F. App'x 725, 727 (6th Cir. 2002). "Under Ohio law, [the agency's] finding is not to be given collateral estoppel or res judicata effect in any separate or subsequent judicial proceeding." *Id.* (citing Ohio Rev. Code § 4141.28(R) (now codified at § 4141.281(d)(8)); *Noyes v. Channel Prods., Inc.*, 935 F.2d 806, 809 n. 1 (6th Cir. 1991)).

Second, even accepting as true Plaintiff's contention that he informed his supervisor that he was leaving early on November 22, 2011, Plaintiff still could not show pretext. The Sixth Circuit has specifically held that a plaintiff's dispute over the facts upon which his discharge was based is insufficient:

> The ground rules for application of the honest belief rule are clear. A plaintiff is required to show "more than a dispute over the facts upon which the discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001). We have not required that the employer's decision-making process under scrutiny "be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Furthermore, "the falsity of [a] [d]efendant's reason for terminating [a] plaintiff cannot establish pretext as a matter of law" under the honest belief rule. *Joostberns,* 166 Fed.Appx. at 794 (footnote omitted). As long as the employer held an honest belief in its proffered reason, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith,* 155 F.3d at 806; *see also Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001).

16

*Seeger*, 681 F.3d 274 at 285–86.

While "[a]n employer's invocation of the honest belief rule does not automatically shield it," it is the employee who must "produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Id.* at 286 (quoting *Smith*, 155 F.3d at 807). Plaintiff here has offered no evidence of an error on the part of Defendant that is too obvious to be unintentional, nor any other contrary evidence. Plaintiff does not challenge any of the investigatory procedures or the disciplinary hearing process. He only disputes the facts and the conclusion reached by Defendant that he had, in fact, violated the work rules. This is insufficient to overcome Defendant's honest belief.

The Court concludes that Defendant relied on the particularized facts before it when it made an informed and considered decision that Plaintiff had violated the work rules while on a Last Chance Agreement that required his termination. Plaintiff has not refuted Defendant's honest belief, and therefore, he cannot show that his termination was a pretext for discrimination and/or retaliation based on his use of FMLA leave. Accordingly, Defendant is entitled to summary on Plaintiff's FMLA claims.

## IV.

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 21.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

_3-20-2014_
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

17